601 A.2d 854

**Suzanne H. WOODINGS**

v.

**Robert T. WOODINGS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 1991.

Decided Jan. 7, 1992.

James V. Voss, Pittsburgh, for appellant.

David B. Buerger, Pittsburgh, for appellee.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

TAMILIA, Judge.

This is an appeal from an Order of the trial court granting appellee's motion for summary judgment and dismissing appellant's petition to terminate alimony.

The parties were divorced on May 5, 1989. Prior to that date, on April 6, 1989, they reached an agreement for the equitable distribution of the marital estate and the payment of alimony to wife. The trial court entered a consent Order, incorporating the agreement, which provided in separate sections for yearly equitable distribution payments from 1989–1993 and alimony payments of $3,800 per month beginning in April of 1989 and ending in December, 1993. The final sentence of the agreement stated "the payments shall be non-modifiable and shall terminate on the death of the wife." In March of 1990, husband filed a petition to terminate alimony on the basis that wife was cohabitating with a person of the opposite sex not a member of her family. The trial court denied husband relief since the parties' agreement expressly disallows modification of alimony and conditions its termination prior to December 1993 only upon wife's death.

Husband argues wife's entitlement to receive alimony must be terminated as a result of her admission of cohabitation within the meaning of section 507 of the Divorce Code, which provides as follows:

§ 507. Bar to any alimony

No petitioner shall be entitled to receive any award of alimony where such petitioner has entered into cohabitation with a person of the opposite sex who is not a member of the petitioner's immediate family within the degrees of consanguinity subsequent to the divorce pursuant to which alimony is being sought.

23 Pa.C.S. § 3706.[1] He also contends section 401.1 only precludes modification, not termination, of the disposition of property rights between the parties. That section provides, in pertinent part:

§ 401.1 Effect of agreement between parties

(c) In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court.[2]

The trial court found and wife agrees payment of alimony to a spouse who engages in cohabitation is to be terminated under section 507 only if the payments are made as a result of an *award* by the court. Alimony due under an *agreement* of the parties, even if incorporated in a court Order, is paid as a result of the agreement and not of an award. Section 401.1(c) forbids modification of an agreement for alimony, and by implication an attempt to terminate a provision of the agreement would be beyond the powers of the court unless expressly provided in the agreement. The reason for this interpretation is that section 401.1 (now section 3105) is a legislative expression limiting the jurisdiction of the court as expressed in sections 301, Jurisdiction, and 302, Residence and domicile of parties (now section 3104), in modification of agreements, while permitting civil

---

1. Section 507 was amended on December 19, 1990 by P.L. 1240, No. 206, § 2, and is now codified at 23 Pa.C.S. § 3706, which changed only the wording but not the substance of the section. The purpose of the amendment was the recodification of the Domestic Relations Code which does not effect the substance of the section.

§ 3706. Bar to alimony

No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has entered into cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity.

2. The contents of section 401.1(c) can now be found at 23 Pa.C.S. § 3105(c). The only difference between the two sections is section 3105(c) has the following subheading: Certain provisions not subject to modification.

enforcement procedures pursuant to section 501, Alimony, subsection (f) (now section 3701(f)). Whenever the court approves an agreement for payment of alimony voluntarily entered into between the parties, the agreement shall constitute the Order of the court and may be enforced as provided in section 503, Enforcement of arrearages (now section 3703).

Summary judgment should not be entered by the trial court unless the case is clear and free from doubt. A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631 (1990); Pa.R.C.P. 1035. We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Bushless v. GAF Corporation*, 401 Pa.Super. 351, 585 A.2d 496 (1990). After carefully reviewing the trial court Opinion, the agreement between the parties as incorporated in the consent Order, and the relevant case and statutory law, we find the trial court's Order granting wife's motion for summary judgment was not in error.

■ Husband's argument that section 507 bars wife from receiving alimony payments is misguided because this statutory provision applies only to alimony which is the result of a court ordered *award*, and not to alimony payments which are made pursuant to a property settlement agreement between parties.

■ *VanKirk v. VanKirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984), is directly on point. In *VanKirk*, the parties reached an agreement which was incorporated into the consent Order. The agreement stated "the within alimony award is not subject to modification." *Id.*, 336 Pa.Superior Ct. at 504, 485 A.2d at 1195. Husband argued his obli-

gation to make alimony payments under the agreement ended pursuant to section 507. This Court held as follows:

> The alimony payments in this case, while enforceable as a court order ... are not the result of an "award" of alimony by the court, but rather are the result of an agreement between the parties. The court did not enter an alimony award pursuant to the terms of Section 501 of the Act; it merely agreed to the entry of an order that reflects the agreement of the parties as to their respective property rights.

*Id.,* 336 Pa.Superior Ct. at 505, 485 A.2d at 1196. The court then stated any conflict with property settlement agreements must be resolved under any general contract principles.[3] With this in mind, the court analyzed the agreement.

> The agreement in this case made no provision for the cessation of payments in the event appellee cohabited with a man. In fact, the agreement does not call for the termination of payments in the event of her remarriage. Instead, it clearly provides for payments for eighteen months in exchange for Mrs. VanKirk's promise not to pursue her claim for equitable distribution. There is no suggestion that appellee did not meet her end of the bargain and we will not permit appellant, who benefited from her promise, to renege on his.

*Id.,* 336 Pa.Superior Ct. at 506, 485 A.2d at 1196. The court concluded if the parties had intended the payments to cease upon cohabitation, they could have so provided.

The agreement in this case clearly states husband is to pay $3,800 per month alimony to wife through 1993. As in *VanKirk,* the agreement also states the alimony provision is "non-modifiable" and does not provide for termination upon either wife's remarriage or cohabitation. Therefore, under general contract law husband is not entitled to cease making the payments.

Husband sets forth a detailed legislative history analysis of section 507 in arguing it applies to the present factual

---

3. This position was recently reiterated in *Frank v. Frank,* 402 Pa.Super. 458, 587 A.2d 340 (1991).

scenario. He points out the intent of section 507 was to cut off the right of alimony to an economically dependent spouse who subsequently cohabitates with a member of the opposite sex because most likely the economic need is cured and the new economic interdependence or dependent relationship should free the previous individual who is under alimony obligation. A recipient spouse, even if not receiving economic benefits from the person with whom he or she is cohabitating, voluntarily chooses to incur additional expenses which arise as a result of an additional person living in the household. Husband contends it is not equitable to force the payor spouse, in effect, to assist in the support of the cohabitating partner. He concludes a document providing for alimony, whether characterized by the courts as an agreement or an award, is not required to incorporate language regarding the effect of cohabitation in the document because the Divorce Code expressly provides for the termination of the entitlement to alimony upon the occurrence of this event.

We agree with the trial court "[h]usband's argument that the legislative history of Section 507 mandates relief in this case ignores the ability of parties to a divorce proceeding to alter their rights through agreement." (Slip Op., Kaplan, J., 3/7/91, p. 4.) Wife's right to payments is not based on an award but is instead based on the signature of husband to a contract. Therefore, section 507 does not come into play. The rationale for not modifying an alimony agreement even after cohabitation by a party was explained in *Stanley v. Stanley*, 339 Pa.Super. 118, 488 A.2d 338 (1985):

> The [trial] Court recognized that bargaining takes place during the process of reaching a consent order which integrates alimony and equitable distribution and found that a *quid pro quo* existed for the integrated agreement.

*Id.*, 339 Pa.Superior Ct. at 122, 488 A.2d at 340. The Court also stated:

> 'We would be naive to think that tradeoffs do not occur between equitable distribution and alimony.' ... [A]ttempting to modify an alimony/property distribution order would be 'most inequitable' and would wreck [sic]

havoc upon the parties to an equitable distribution proceeding....'

*Id.,* 339 Pa.Superior Ct. at 121–122, 488 A.2d at 339, 340 (citation omitted).

We agree with the trial court's analysis of the law in conjunction with the facts of this case.

> The parties' agreement reflects the "trade-offs" between alimony and equitable distribution. In exchange for a right to alimony, Wife agreed to a smaller share of the parties' marital estate. Husband, in turn, agreed to pay this alimony in exchange for a greater share of the marital estate than he otherwise would have received without the alimony provision. To terminate the alimony for reasons not set forth in the agreement, therefore, clearly would produce the "havoc" envisioned in [*Stanley*] by destroying Wife's bargained-for rights while allowing Husband to retain the benefits of his bargain.

(Slip Op. at 6.)

More recently, in *DeMatteis v. DeMatteis,* 399 Pa.Super. 421, 582 A.2d 666 (1990), we again held a property settlement agreement embodied in the court Order is non-modifiable:

> A divorce agreement is not incorporated into the parties' divorce decree so as to permit revision of a provision in the agreement if the parties did not intend such effect in their agreement. This is so despite a statement in the agreement that it was to be incorporated into the divorce decree. Under such circumstances, the agreement remains an enforceable contract not subject to unilateral modification as a court order.

*Id.,* 399 Pa.Superior Ct. at 431–432, 582 A.2d at 671 (citations omitted).

Appellant next contends the trial court erred in relying on section 401.1(c) of the Divorce Code because the section addresses modification and not termination of agreements providing for the disposition of alimony. Section 401.1(c) states a property settlement agreement between the parties is not subject to modification by the court unless there is a specific provision in the agreement to the contrary. Hus-

band argues modification and termination are two separate legal concepts and if the legislature had intended section 401.1 to preclude termination as well as modification of alimony it would have incorporated the word "termination" into the section.

In *Jackson v. Culp*, 400 Pa.Super. 519, 583 A.2d 1236 (1990), this Court, with regard to an incorporated but unmerged property settlement agreement, stated the 1988 amendment to the Divorce Code functions only as a procedural mechanism for enforcement of that agreement through a civil contempt action. Section 401.1(c) does not allow for modification of an unmerged marital settlement agreement.[4]

We find husband's contention that section 401.1(c) speaks only to modification and not termination to be unpersuasive. Pursuant to the 1988 amendments to the Divorce Code, the legislature felt it imperative to deal separately with the effect of agreements between the parties. In section 401.-1(a) (now section 3105(a)), it provided that whether or not an agreement has been merged or incorporated into the decree, the provisions of the Divorce Code provide for enforcement to the same extent as if the agreement was an Order of court, except as provided to the contrary in the agreement.

To retain the sanctity of contract, which may *not* be changed or modified by court Orders, absent an ambiguity or fraud, section 401.1(c) (now section 3105(c)) provides that in the absence of specific provisions appearing in the agreement, disposition of property rights and interests between the parties, alimony, alimony pendente lite, counsel fees and expenses shall not be subject to modification by the court. (Subsection (b) in both 401.1 and 3105 reserves the right of the court to modify support, custody and visitation rights as to children upon a showing of changed circumstances. Rights of children may not be bargained away by parents).

---

4. It is clear the legislature understood what it was doing in protecting the sanctity of contracts between consenting adults as in section 401(b) it provided for modifiability of child support and custody agreements as the court is not bound by agreements as to those issues due to public policy considerations.

We have interpreted these provisions to 1) protect the agreement of the parties from subsequent modification by the court, unless modification is provided for in the agreement and 2) to permit the use of remedies and sanctions contained in the Divorce Code to enforce the agreements, in addition to the rights available at law for the enforcement of contracts by actions in assumpsit. The problems relating to incorporation and merger are, therefore, eliminated as to any agreements entered after 1988. The 1988 amendments as a matter of law provide for enforcement but not modification of agreements. *See Jackson, supra.*

The next step in our analysis requires us to consider whether modification includes termination. Currently, the Divorce Code, section 3701, Alimony, provides:

(a) General rule.—Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.

. . . .

(f) Status of agreement to pay alimony.—Whenever the court approves an agreement for the payment of alimony voluntarily entered into between the parties, the agreement shall constitute the order of the court and may be enforced as provided in section 3703 (relating to enforcement of arrearages).

It is to be noted that the treatment of Orders approving agreements is treated separately from Orders directly entered by the court and the jurisdiction of the court is limited to *enforcement only* unless the agreement provides otherwise. Thus section 3105(c), Certain provisions not subject to modification, must be read in conjunction with section 3701(f) and such an Order cannot be modified unless specifically provided in the agreement. Section 3701(e), Modification and termination, does not apply to such Orders or agreements as this is a permissible exercise of jurisdiction only when an award is made directly by the court as a result of an alimony action or the agreement so provides.

■ Following this rationale and applying it to termination, whether termination is inclusive in the term modification or not is irrelevant. The intent of the inclusion of alimony *agreements* only in the enforcement process of the Divorce Code did not extend application of other Code provisions relating to alimony to agreements. Alimony *awards* are governed by statute and provisions such as the bars relating to cohabitation and termination upon remarriage take effect by operation of law because the award is governed by the statute. Even those provisions may be altered by court Order. Alimony agreements are not governed by the statute but express the mutual agreement of the parties. Unless the parties so specify, the agreement may not be modified, extended or terminated. There are a number of examples of how alimony agreements continue to be effective despite cohabitation or remarriage because the agreement could not have been reasonably interpreted otherwise. *See Zullo v. Zullo,* 395 Pa.Super. 113, 576 A.2d 1070 (1990); *D'Huy v. D'Huy,* 390 Pa.Super. 509, 568 A.2d 1289 (1990); *Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981). Even death may not terminate alimony where the agreement or court Order specifically provides otherwise. *Chaney v. Chaney,* 343 Pa.Super. 77, 493 A.2d 1382 (1985). When an agreement is entered for a specific amount for a stated period of time, without conditions for modifications or termination, it cannot be presumed that the parties intended the statutory bar or termination sections to apply. As stated by the trial court, agreements embody many considerations by the parties, and the quid pro quo represented by the agreement often may not be apparent on its face. To incorporate extraneous statutory provisions to modify or terminate the agreement when not provided in the agreement may seriously impair the rights of the contracting parties.

The trial court found the agreement in this case represented a compromise between the amount to be divided in equitable distribution and the amount to be received as alimony. Change in the contract implementation would

violate the terms of the agreement. For these reasons the Order of the trial court in granting summary judgment to the wife is affirmed.

Order affirmed.