J-A30027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID G. HAWK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| TRACEY C. HAWK, | : | |
| | : | |
| Appellant | : | No. 1749 WDA 2017 |

Appeal from the Order October 26, 2017
in the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD 10-008168-016

| | | |
|---|---|---|
| DAVID G. HAWK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TRACEY C. HAWK | : | |
| | : | |
| Appellee | : | No. 1795 WDA 2017 |

Appeal from the Order Entered October 26, 2017
in the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD 10-008168-016

BEFORE:   SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 25, 2019**

In these consolidated cross-appeals, Tracey Hawk (Wife) appeals the order terminating her alimony upon the trial court's finding that she cohabitated.  David Hawk (Husband) appeals the trial court's decisions to

_____
*   Retired Senior Judge assigned to the Superior Court.

deny his claim for attorney's fees and to limit Wife's obligation to pay back a number of alimony payments. Upon review, we affirm.

The alimony agreement at issue in this appeal is the result of an unusual set of facts. Thus, we begin with a lengthy, albeit necessary, recitation of the factual and procedural history of this case.

Husband and Wife wed in 1983 and separated in 2009. They then commenced divorce proceedings. On July 16, 2012, the parties entered into a consent order settling their marital estate. The parties explicitly left unresolved Wife's alimony claim:

> All other claims raised by the parties remain active and pending, and are still subject to final resolution, either through agreement of the parties or by court order, including but not limited to Wife's claims for alimony and counsel fees. Nothing in this consent order shall be construed to prohibit Wife from seeking alimony.

*See* Consent Order, 7/16/2012, at ¶ 11 (July 2012 consent order).

Litigation lingered. Wife's alimony claim eventually went to a three-day hearing before a master in the spring of 2014. Husband raised the defense of cohabitation, alleging that Wife was cohabiting with Todd Staniland. At the time, Wife claimed there was no cohabitation. The Master found no cohabitation and awarded Wife $3,470 per month in alimony until 2024 (when Wife turned 62 years old), at which time the alimony would be reduced to $600 per month until it terminated in 2027. The Master qualified the award by subjecting it to modification in the event of: "Wife's remarriage or cohabitation as defined under [Pennsylvania] statute and case law; a

reduction in Husband's income to less than $10,000 per month net; Husband's disability or death." Master's Report and Recommendation, 5/2/2014, at 5.

The parties filed exceptions and cross-exceptions with the trial court. In an October 10, 2014 order (October 2014 order), the trial court largely adopted the Master's recommendation, but reduced the amount of alimony from $3,740 to $2,640 to reflect Wife's earning capacity. *See* Order of Court, 10/10/2014. The court also granted Husband's exception concerning alimony modification:

> ¶ 8. [Husband's] Exception #10 is GRANTED.
>
> a. The following language is **STRICKEN** from the Master's Report and Recommendation: "This alimony shall be modifiable in the following circumstances: Wife's remarriage or cohabitation as defined under PA statute and case law; a reduction in Husband's income to less than $10,000 per month net; Husband's disability or death."
>
> b. The following language is **ADDED** to the Master's May 2, 2014 Report and Recommendation: "This alimony shall be modifiable in accordance with the provisions of 23 Pa.C.S[] § 3701, *et. seq*."

*Id.* at ¶ 8. Husband appealed to this Court. Soon after, Husband filed two separate petitions with the trial court, one to modify the award (on account

- 3 -

of his changed financial circumstances) and one to terminate it (on account of Wife's cohabitation).[1]

During the pendency of the appeal, the parties settled. The parties agreed, *inter alia*, that Wife would accept the trial court's reduced alimony figure and Husband would withdraw his appeal and his petitions to modify and to terminate alimony. The parties submitted a consent order, dated April 2, 2015, to reflect this agreement. This April 2015 consent order governs the case before us.

Specifically, the April 2015 consent order stated: "Alimony will continue in accordance with [the October 2014 order] as to amount, duration, modification and termination provisions."[2] Consent Order, 4/2/2015. Thus, pursuant to the October 2014 order, the operating order provided in pertinent part:

- "This alimony shall be modifiable in accordance with the provisions of 23 Pa.C.S.[] § 3701, *et. seq*."

- "[Husband] shall pay [alimony] to [Wife] … through October 16, 2027, at which time [Husband's] alimony obligation shall terminate."

*See* Order of Court, 10/10/2014, at ¶ 7(b)(ii), ¶ 8(b).

---

[1] In between the petitions, the court entered the parties' divorce decree.

[2] The April 2015 consent order contained a typographical error. The parties referred to the October 2014 order as the October *16*, 2014 Order. It is clear from the record that the parties were referring to the October *10*, 2014 Order.

Nearly two years later, in March 2017, Husband presented a motion to terminate alimony. In addition to termination, Husband sought repayment of alimony dating back to Wife's cohabitation, as well as attorney's fees. Motion to Terminate, 3/17/2017. Following a two-day hearing, the trial court ruled that "Husband has met his burden of proof to establish that [] Wife is cohabit[ing] with [Staniland]. As such, [] Husband's obligation to pay [] Wife alimony pursuant to the terms of the [April 2015 consent order] is hereby terminated. … Husband's request for repayment of back alimony is denied. [The parties'] cross claims for counsel fees are both denied." Order of Court, 10/26/2018. Wife and Husband timely filed appeals and cross-appeals. We address these appeals sequentially.

**Wife's Appeal**

Wife presents three issues for our review, which we have reordered for ease of disposition.

1. As a matter of law, the trial court erred in failing to hold that Husband was estopped under principles of *res judicata* and/or collateral estoppel from raising cohabitation as a basis for terminating alimony when the same issue had been previously litigated in 2014.

2. As a matter of contract law, the trial court erred in failing to dismiss Husband's petition for termination of alimony pursuant to the terms of the April 2, 2015 consent order which specifically incorporated the modification and termination provisions set forth in the [October 2014 order], and provided for termination of alimony only when Wife reaches 62 years of age.

3. As a matter of law, the trial court erred in terminating Husband's alimony obligation to Wife pursuant to 23 Pa.C.S. § 3706 because Wife's entitlement to alimony arose from a

- 5 -

comprehensive marital settlement agreement, [the July 2012 consent order], which did not contain a specific provision for termination of alimony upon Wife's cohabitation with another man.

Wife's Brief at 5-6 (suggested answers and unnecessary capitalization omitted).

We address first Wife's claim that Husband was precluded from relitigating Wife's cohabitation with Staniland as a basis for terminating alimony. Wife's Brief at 42-46. Specifically, Wife contends Husband "was estopped under the principles of *res judicata* and/or collateral estoppel[3] from raising cohabitation as a basis for terminating alimony when the same issue had been previously litigated in 2014." **Id.** at 42.

---

[3] This Court has defined the doctrines of *res judicata* and collateral estoppel as follows.

> Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. The doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein. Similarly, [t]he doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit.

**Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 286 (Pa. Super. 2016) (internal citations and quotation marks omitted).

By way of further background, in 2014, at a hearing before a master to resolve Wife's claims of alimony, Husband raised the defense of cohabitation, alleging that Wife was cohabiting with Staniland. As set forth *supra*, at the conclusion of the hearing, the Master found no cohabitation and awarded Wife alimony. Both Husband and Wife filed exceptions with the trial court. Ultimately, in the October 2014 order, the trial court, *inter alia*, accepted the Master's finding that Wife and Staniland were not cohabiting. According to Wife, it is these prior findings by the Master and the trial court that preclude Husband from relitigating a claim of cohabitation as it relates to Wife and Staniland.

The trial court disagreed, finding that the April 2015 consent order permitted either party to petition for a change to the alimony agreement upon a showing of changed circumstances. **See** Trial Court Opinion, 2/2/2018, at 25 ("The [trial] court properly heard Husband's motion[] because he presented new evidence pertaining to new circumstances of cohabitation[.]") (unnecessary capitalization omitted). Our review of the April 2015 consent order and the applicable statute supports the trial court's determination.

The April 2015 consent order incorporated specifically, via the October 2014 order, a provision to allow for modification pursuant to 23 Pa.C.S. § 3701 *et. seq.* Consequently, the consent order was subject to, *inter alia*, the provisions set forth in 23 Pa.C.S. § 3701(e) ("An order entered pursuant to

this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made."). As such, either party was entitled to file a motion upon the discovery of a substantial change in circumstances.

In this case, Husband filed a motion to terminate alimony in March 2017, alleging that he had "new evidence to support a finding" that Wife and Staniland were cohabiting. Motion to Terminate, 3/17/17, at ¶ 14. In light of the foregoing, despite the trial court's prior finding, Husband was permitted to present new evidence to the trial court in support of his contention that Wife was cohabiting. Therefore, this claim is without merit.[4]

We now address Wife's final two issues. The crux of these claims is that the trial court erred and abused its discretion when it determined that the terms of the April 2015 consent order authorized the termination of alimony upon Wife's cohabitation. Although the initial source of Wife's alimony was an award from the trial court, the parties converted the award to an agreement via the April 2015 consent order. The principles that govern court-ordered awards and consent orders are different. Thus, because the instant alimony obligation arose out of a consent order, rather

---

[4] Moreover, the acceptance of Wife's argument would produce an absurd result; such an interpretation would allow Wife, after a prior determination that there was insufficient evidence to prove cohabitation, to begin cohabiting with impunity.

than a court-ordered award, it is governed by contract law. ***See Little v. Little***, 657 A.2d 12, 15 (Pa. Super. 1995). Therefore, we review these claims mindful of the following.

"Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." ***Id***. (citation omitted).

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.

***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted).

First, Wife argues that the pertinent language in the October 2014 order that was adopted by the April 2015 consent order, "carefully distinguishes between modification and termination of Husband's alimony obligation." Wife's Brief at 19. Wife specifically notes that the use of the term "termination" is used only to indicate exactly when the alimony will cease, *i.e.*, in October 2027. ***Id.*** at 19-20. Thus, Wife contends that the consent order allows for modification only and not complete termination. ***Id.*** at 22-23.

To support her interpretation, Wife cites the following provisions adopted in the April 2015 consent order: "This alimony shall be **modifiable** in accordance with the provisions of 23 Pa.C.S. § 3701, *et. seq*. … [Husband] shall pay to [Wife] … through October 16, 2027, at which time [Husband's] alimony obligation shall **terminate**." Order of Court, 10/10/2014, at ¶ 7(b)(ii), ¶ 8(b). Wife distinguishes the terms "modification" and "termination," and argues that "to the extent [cohabitation] could be reached through the '*et seq.*' language, it still, at best, serves only as a basis for modification of Husband's alimony obligation, and not a wholesale termination of his obligation." Wife's Brief at 23.

Husband contends that in the April 2015 consent order, he and Wife "were in essence adopting the statutory provisions set forth in … 23 Pa.C.S. § 3701, *et seq.*, but more precisely 23 Pa.C.S. § 3706[5] (bar of alimony if cohabitation exists)[,]" and therefore, termination upon cohabitation was warranted. Husband's Brief at 14.

_____

[5] Section 3706 provides:

> "No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has entered into a cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity."

23 Pa.C.S. § 3706.

Ultimately, the trial court concluded that the April 2015 consent order permitted termination upon cohabitation.

> In the case *sub judice*[,] Wife clearly consented to a termination provision contingent upon cohabitation. On July 16, 2012, the parties consented to an equitable distribution consent order. The agreement specifically preserved [Wife's] alimony claims under ¶ 11. The [trial] court notes that Wife drafted the language of the [July 2012] consent order[.] On October 10, 2014, the [trial c]ourt entered an order that contained an alimony modification provision under ¶ 8(b). This section provided that the order was subject to 23 Pa.C.S. § 3701 *et seq.* On April 2, 2015, the parties consented to an order that referenced and specifically incorporated the [October 2014 consent order's] modification provision. Cohabitation, therefore, was a modification condition *sub judice* in that alimony would be modified via termination pursuant to § 3706. The [trial] court further determined that Wife's testimony showed that she understood that [c]ohabitation per § 3706 would terminate her alimony pursuant to the [April 2015] consent order.

> Since the April 2015 consent order incorporated a modification provision adhering to 23 Pa.C.S. § 3701 *et seq.*, the [trial] court found that[] Husband could pursue a new termination petition under §3701(e).

Trial Court Opinion, 2/2/2018, at 27-28 (unnecessary capitalization and citations omitted). We agree.

Specifically, while cognizant of the language used in the April 2015 consent order and in agreement with Wife that "termination" and "modification" have distinct definitions, this Court finds that reasonable minds could differ in what a "modification" of support could potentially entail. *See Tuthill v. Tuthill*, 763 A.2d 417, 420 (Pa. Super. 2000) ("A contract will be found to be ambiguous only if it is fairly susceptible of

different constructions and capable of being understood in more than one sense."). Certainly, termination of alimony would modify an existing alimony order.

Moreover, even if one were to concede that the language is free of ambiguity, we find the conduct of the parties reflects an understanding that differs from the "unambiguous terms" of the consent order. As such, we find the foregoing warrants further discovery into the intent of the parties. **See Kripp**, **supra**. **See also Mazurek v. Russell**, 96 A.3d 372, 378 (Pa. Super. 2014) ("[A] court may examine the surrounding circumstances—i.e., extrinsic or parol evidence—to ascertain the intent of the parties and resolve the ambiguity.") (citation and quotation marks omitted).

As noted *supra*, in its opinion to this Court, the trial court found that the testimony from the hearing on Husband's motion to terminate alimony revealed that Wife's understanding of the April 2015 consent order was that her alimony would be terminated if she cohabited.

> Wife testified that she was not allowed to have a romantic relationship with [Todd] Staniland[, with whom Husband claimed Wife was cohabiting] or else her alimony from Husband would be terminated under the terms of the settlement agreement. When asked if she ever had sexual relations with Staniland, Wife testified that she did not because "[f]or one I don't want that type of relationship and for two I can't afford to have a relationship." When Wife's counsel of record asked her to elaborate as to why she "couldn't afford to have a romantic relationship[,]" Wife replied: "I know what the terms of my agreement with [Husband] are. I have followed them to the letter. I don't want nor can I afford to be in that type of relationship."

- 12 -

Wife's eldest daughter, [Ashley], was also under the impression that a strict condition of Wife's receipt of alimony was for Wife to not have a romantic relationship with Staniland. Ashley testified that she once hoped Wife would enter into a romantic relationship with Staniland. When asked if she ever conveyed this wish to Wife, Ashley replied:

> "Yeah, we've talked about that. [Wife] is extremely concerned all it [*sic*] the time, and actually stresses me out a lot, that her health care is upwards of $1,000 a month and she works a full-time job plus with whatever spousal support she gets from [Husband]. Like she would never enter into any type of relationship. She has absolutely no desire to ever be married again or have that type of pressure from a relationship, and especially with [Staniland]. It just never turned into anything like that."

In response to the immediate next question, when asked if Wife had ever talked to Ashley about her feelings toward Staniland, Ashley testified that:

> "[Wife] cares about [Staniland] and she has even said like, you know, she would never risk the agreement for anything because she needs her health care. She needs the money that was allocated to her. I mean, her [*sic*] and I have even talked about, and [Staniland] has even said, [`]Well, I'll move out.[']..."

Trial Court Opinion, 2/2/2018, at 8-9 (citations omitted).

Here, it is clear from the record that Wife's understanding of the agreement was that she was disallowed from cohabiting, and if the trial court found she was cohabiting, her alimony would be terminated. At the hearing, Wife emphatically denied cohabiting. *See Id.* Now on appeal, Wife is not raising an issue concerning the trial court's cohabitation finding, but is instead arguing that the language adopted by the April 2015 consent order

supports her theory that her alimony can only be modified and is not subject to termination prior to 2027.

It is well-settled that the parties' "interpretation is entitled to great, if not controlling, influence, and will generally be adopted and followed by the courts, particularly when the parties' interpretation is made before any controversy, or when the construction of one party **is against his[/her] interest**." **Z & L Lumber Co. of Atlasburg v. Nordquist**, 502 A.2d 697, 701 (Pa. Super. 1985) (emphasis added). **See also Martin v. Capital Cities Media, Inc.**, 511 A.2d 830, 840 (Pa. Super. 1986) ("The parties' own interpretation of a contract, as shown by their acts and declarations, will ordinarily be adopted by the court.") (quotation marks omitted). Based upon the foregoing, we find the intention of **both** parties was to permit the termination of alimony upon Wife's cohabitation and therefore, the trial court did not err when it found Wife's cohabitation required the termination of alimony. No relief is due.[6]

---

[6] Wife also contends that "[r]egardless of cohabitation, [she] has the right to receive alimony until she reaches 62 because her entitlement to alimony arose from the parties[']" July 2012 consent order which "was a negotiated and bargained-for agreement that integrated equitable distribution and alimony claims." **Id.** at 24-28 *citing* **Woodings v. Woodings**, 601 A.2d 854 (Pa. Super. 1992) (finding the parties' settlement agreement disallowed the termination of alimony despite the fact that the wife was cohabiting because the agreement was a reflection of "trade-offs" made by the parties between alimony and equitable distribution and the agreement contained specific language that set forth that "the alimony provision [was] 'unmodifiable'" ).

*(Footnote Continued Next Page)*

**Husband's Appeal**

Husband presents the following two issues for our review:

> A. Did the trial court err, as a matter of law, in failing to order Wife to pay back the alimony received from the date Husband petitioned to terminate alimony?
>
> B. Did the trial court err, as a matter of law, in failing to award Husband attorney['s] fees pursuant to 42 Pa.C.S[] § 2503 and 23 Pa.C.S.[] §§ 4351, 4353?

Husband's Brief at 6.

We address first Husband's retroactivity claim. While Husband initially requested the repayment of back alimony that extended prior to the filing of his motion, *see* Motion to Terminate, 3/17/2017, Husband's sole argument on appeal is that the trial court erred in failing to order the termination of Wife's alimony retroactive to the date Husband filed his motion. Husband's Brief at 25.[7] In this case, in its October 26, 2017 order, the trial court

---

*(Footnote Continued)* ————————————

Wife's argument is without merit. Unlike in **Woodings**, the resolution here of the parties' equitable distribution was separate and apart from the ultimate alimony award. This is evidenced by the specific language in the July 2012 consent order, which set forth that the consent order was to resolve equitable distribution only, and Wife's alimony claims remained outstanding. **See** Consent Order, 7/16/2012, at ¶ 11. Moreover, the April 2015 consent order permitted modification pursuant to the earlier October 2014 order, which indicated, *inter alia*, that the consent order would be "modifiable in accordance with the provisions of 23 Pa.C.S. § 3701, *et seq.*" Order of Court, 10/10/2014.

[7] In his brief, Husband cites March 14, 2017 as the date he filed his petition to terminate. **See** Husband's Brief at 25 ("Husband established cohabitation began, at the very least, as of the date of the filing of his [p]etition, known as March 14, 2017."). However, the timestamp on Husband's petition lists
*(Footnote Continued Next Page)*

terminated alimony "effective November 1, 2017." Order of Court, 10/26/2017. Thus, Husband is requesting the repayment of seven and one-half months of alimony.

> The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court.

**Dalrymple v. Kilishek**, 920 A.2d 1275, 1278 (Pa. Super. 2007).

As set forth in more detail *supra*, the April 2015 consent order is subject to, *inter alia*, the provisions set forth in 23 Pa.C.S. § 3701. This statute, in pertinent part, states:

> **(e) Modification and termination.--**An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

23 Pa.C.S. § 3701(e).

> In denying Husband's request for retroactivity, the trial court
>
> found that it would have been inequitable to award Husband replacement of back alimony. The [trial c]ourt further found that Wife was under financial hardship due to her leukemia treatment costs and low income. Wife is [55], makes nine dollars [] per

(Footnote Continued) ————————

March 17, 2017, although an order attached to the petition is dated March 14, 2017. Irrespective of the foregoing, in light of our disposition, we need not determine the exact date of filing.

hour, and does not have a college degree. Wife has $15,000.00 in her savings account and owns a home worth $181,800.00. Wife and [the parties' daughter] testified that Wife's medical costs are [$900.00] per month. [Their daughter] testified that Wife's medication is so expensive that Wife was forced to petition drug companies monthly for free samples. She further testified that Wife would "skip days of medication" and "split pills in half" to make her medication last.

The [trial c]ourt found that Husband was not under financial hardship. Husband testified that he made "hundreds of thousands of dollars" in gross income during 2016 alone. Husband also owns a $520,000.00 home. His mortgage on the home has a $50,000.00 balance.

Trial Court Opinion, 2/2/2018, at 30-31.

On appeal, Husband argues that the above-cited statute mandates that an order related to the modification or termination of an existing alimony order be applied retroactive to payments made since the filing of the motion. Husband's Brief at 27-28. ("[T]he [t]rial [c]ourt is obligated to address the payments accruing after the filing of the [motion] since the statute used 'shall' and not 'may.'"). The trial court disagreed, concluding that

[a] careful reading of th[e aforementioned] statute indicates that the [trial c]ourt is merely constrained to awarding replacement of back alimony for improperly received alimony after the petition's filing and not before. Importantly however, § 3701(e) does *not* provide that the [trial c]ourt *must* award arrears for all times where alimony was improperly received. The [trial c]ourt, therefore, properly denied Husband's request for replacement of back alimony.

Trial Court Opinion, 2/2/2018, at 31. We agree.

- 17 -

Specifically, we find no language in § 3701(e) that mandates retroactivity. In light of the foregoing, because the trial court was permitted but not required to apply the order retroactive to the date of filing, Husband is not entitled to relief.[8]

Lastly, Husband asks this Court to determine whether the trial court abused its discretion by denying his request for attorney's fees pursuant to 42 Pa.C.S. § 2503 (governing counsel fees for vexatious ligation) and 23 Pa.C.S. §§ 4351 and 4353 (governing counsel fees in support matters). Husband's Brief at 28-31.

"Our standard of review of an award of [attorney's] fees is well settled: we will not disturb a trial court's determination absent an abuse of discretion." *A.L.-S. v. B.S.*, 117 A.3d 352, 361 (Pa. Super. 2015). "A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." *Id.* *Courtney v. Courtney*, ____A.3d____, 2019 WL 850814, at *2 (Pa. Super. 2019).

Initially, we note that 23 Pa.C.S. §§ 4351 and 4353 govern costs, fees, and reporting requirements in child and spousal support matters. Because

_____

[8] In concluding as such, we find no abuse of discretion in the trial court's decision to deny Husband's request for retroactivity. Based upon its findings with respect to incredible income disparity between the parties and Wife's health issues, the trial court was within its discretion to determine that requiring Wife to repay seven and one-half months of alimony would be inequitable.

the instant matter pertains to alimony only, these statutes are inapplicable and therefore, Husband's reliance on them as a basis for relief is misplaced. Thus, we review Husband's claim pursuant to 42 Pa.C.S. § 2503. ***See In re Estate of Mumma***, 125 A.3d 1205, 1219 (Pa. Super. 2015) ("[P]ursuant to 42 Pa.C.S. § 2503, 'reasonable counsel fees' may be appropriate, among other circumstances, based on 'dilatory, obdurate or vexatious conduct during the pendency of a matter' or where 'the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.'").

In its opinion to this Court, the trial court addressed this claim as follows: "[t]he only § 2503 claim for attorney's fees Husband could make would be for sanctions against Wife or awarded counsel fees due to Wife's alleged vexatious litigation. The Court found that Husband had not proven vexatious litigation by Wife and, therefore, did not award counsel fees to Husband." Trial Court Opinion, 2/2/2018, at 32.

On appeal, Husband contends he is entitled to attorney's fees pursuant to § 2503 because

> [t]he [t]rial [c]ourt found that [] Wife tried to hide from Husband that Staniland was financially supporting both [] Wife and [] the parties' biological daughter. The [t]rial [c]ourt specifically opined[,] "text messages between [daughter] and Husband show that Wife attempted to hide from Husband that the fact that 'Todd was paying for anything.'"

Husband's Brief at 29. Husband asserts the foregoing conduct was "obdurate and vexatious and the [t]rial [c]ourt was in error in not awarding Husband attorney['s] fees." *Id.*

Here, presumably because Wife did not initiate the instant proceedings, the trial court determined that Husband's sole claim under the aforementioned statute that could entitle him to attorney's fees is an allegation that Wife engaged in vexatious conduct. Trial Court Opinion, 2/2/2018, at 32; *see also* 42 Pa.C.S. § 2503(7) ("Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.").

In this case, after reviewing the applicable statute, the learned trial court, who has presided over the parties' divorce and related matters for several years, including the instant motion, and who has an intimate knowledge of this nearly decade-long dispute, determined that Husband failed to meet his burden in proving that Wife's behavior was vexatious.[9] Accordingly, the trial court concluded the award of attorney's fees was improper in this case. We can find no abuse of discretion in the trial court's determination, and Husband's assertions of trial court error have failed to convince us otherwise. *See In re K.R.*, 200 A.3d 969, 978 (Pa. Super. 2018) ("A decision may be reversed for an abuse of discretion only upon

---

[9] "Vexatious refers to conduct with 'the sole purpose of causing annoyance.'" *Commonwealth v. Douris*, 766 A.2d 1276, 1280 (Pa. Super. 2001).

demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.") (citation omitted).

In light of the foregoing, we affirm the trial court's order.

Order affirmed.

Judge Shogan joins this memorandum.

Judge Kunselman files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2019