J-A10020-22

2022 PA Super 129

MONICA L. LONG                          :       IN THE SUPERIOR COURT OF
                                        :              PENNSYLVANIA
                                        :
            v.                          :
                                        :
                                        :
CHRISTOPHER A. LONG                     :
                                        :
            Appellant                   :       No. 538 MDA 2021


Appeal from the Order Entered April 1, 2021,
in the Court of Common Pleas of Columbia County,
Civil Division at No(s):  2018 CV 528.


BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KUNSELMAN, J.:                       **FILED AUGUST 02, 2022**

Appellant Christopher Long (Husband) appeals the order denying his petition to modify the $1,800 monthly support obligation owed to Appellee Monica Long (Wife), per their Marriage Settlement Agreement.  The Agreement treated the obligation as child support, but provided that if Husband requested a modification, the difference between any downward modification and the $1,800 payment would be converted to alimony.  The issue is whether Wife is entitled to alimony after she remarried.  The Columbia County Court of Common Pleas denied Husband's modification petition and concluded that the payments should not be treated as alimony at all, but as "equitable reimbursement" payments.  After careful review, we affirm in part and reverse in part, and we remand for further proceedings.

The parties entered into a Marriage Settlement Agreement on June 2, 2018, and the trial court issued the divorce decree two months later.[1] When the parties entered into the Agreement, both of their children were minors (born in 2000 and in 2006). The Marriage Settlement Agreement reflects the parties' effort to preserve the marital home for Wife, so that the children could reside there until both graduated high school.

Husband agreed to transfer his interest in the martial residence to Wife. **See** Marriage Settlement Agreement, 6/2/18 at ¶ 27. In exchange, Wife agreed to refinance the residence and remove Husband's name from the mortgage; but the parties stipulated that if Wife could not refinance, or otherwise sold the house before the youngest child graduated high school, then the parties would split the proceeds of the sale. **See id**.

To ensure Wife could afford to stay in the marital residence until both children graduated, the Agreement provided that Husband would pay support as follows:

SUPPORT

28. Except as provided below, the parties agree that neither party shall be entitled to any spousal support, alimony pendente lite or alimony as a result of this marriage.

CHILD SUPPORT:

_____

[1] The Marriage Settlement Agreement indicates that Husband was unrepresented by counsel when he entered into the Agreement but that the legal effect of the Agreement was explained to him by Wife's counsel. **See** Marriage Settlement Agreement, 6/2/18 at ¶ 6.

        I.      "Husband" agrees to pay child support for the minor children in the amount of Eighteen Hundred Dollars ($1,800.00) per month***.  It is the parties['] intention to maintain a consistent payment throughout the period until the last child graduates from high school in June of 2024.***  Therefore, if "Husband" requests a modification of the child support during this period of time, then the difference between the child support and the $1,800.00 figure shall be determined to be alimony.  In either case, the child support and alimony shall cease after June of 2024.

*Id*. at ¶ 28 (emphasis added).

Wife refinanced the mortgage, and the parties operated under the Agreement without issue.  Husband continued paying the full amount of support ($1,800) even after the parties' older child reached the age of majority in July 2018 and was removed from the Pennsylvania Automated Child Support Enforcement System (PACSES).

The two events triggering the instant litigation occurred in the Fall of 2020.  First, in September 2020, Husband obtained shared physical custody of the parties' remaining minor child; typically, a shared custody arrangement reduces the amount of an obligor's child support. **See** Pa.R.C.P. 1910.16-4 (Support Guidelines. Calculation of Support Obligation, Formula).  Second, Wife remarried, although it is unclear when.

In October 2020, Husband sought a child support modification before a support officer, but the support officer dismissed the action without prejudice, concluding that Husband first needed to file a motion with the trial court to

modify the alimony provision. *See* Order of Court, 11/16/21. On January 15, 2021, Husband filed a "Petition to Modify and Interpret Marriage Settlement Agreement to Allow Modification of Child Support." The court set the matter for a predisposition conference, which was held in February 2021.

Husband's argument was threefold: 1) He was entitled to request a child support modification; 2) Wife was barred from receiving alimony due to her remarriage; and 3) because Wife was not entitled to alimony, his child support obligation should be modified downward. Wife argued that her remarriage was not a bar to alimony, relying on *Zullo v. Zullo*, 613 A.2d 544 (Pa. 1992) (holding that the wife's remarriage did not terminate the husband's monthly payments, because the payments should be treated as equitable reimbursement rather than alimony). The trial court ultimately denied Husband's petition, and Husband timely-filed this appeal.[2]

Husband presents the following two issues for our review:

> 1. Did the lower court misapply the precedent of *Zullo v. Zullo*, 613 A.2d 544 (Pa. 1992), as the Marriage Settlement Agreement did not explicitly state that the alimony was intended for the maintenance of the Children's home?

---

[2] The court initially denied Husband's petition on March 10, 2021. Husband filed motion for reconsideration, which the court granted on March 26, 2021. The court set the matter for a hearing on April 1, 2021. After reconsidering the parties' positions and addressing whether additional testimony was necessary, the court concluded that its original decision was correct. The court then issued an order, also dated April 1, 2021, which "affirmed" its prior March 10, 2021 order. Because the trial court expressly granted reconsideration, Husband's appeal from the April 1, 2021 order is timely. *See* Pa.R.A.P. 1701(b)(3).

- 4 -

2. Did the lower court err in failing to take into consideration that the minor children now split their time evenly between the homes of their parents, which is a significant change in circumstances?

Husband's Brief at 4.

We address these issues contemporaneously. We begin our discussion by recognizing that the principles governing contractual agreements are different from those governing court-ordered awards. Because the instant support obligation arose from an agreement, rather than a court-ordered award, this matter is governed by contract law. **See Little v. Little**, 657 A.2d 12, 15 (Pa. Super. 1995); **see also Rosiecki v. Rosiecki**, 231 A.3d 928, 932-33 (Pa. Super. 2020). It is well-settled that under contract law, the court must ascertain the intent of the parties when interpreting an agreement:

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.

**Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted).

In determining whether the trial court properly applied contract principles, the reviewing Court must decide whether the trial court committed an error of law or an abuse of discretion. **Lewis v. Lewis**, 234 A.3d 706, 711

(Pa. Super. 2020) (citation omitted). We have explained the dichotomy as follows:

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.
>
> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Rosiecki*, 231 A.3d at 933 (citation omitted).

Moreover, we are not limited by a trial court's rationale, as we may affirm its decision on any basis. *Id.*

At the outset, we observe that child support obligations are modifiable by the court upon a showing of a changed circumstance, even when that obligation arose from a marriage settlement agreement. *See* 23 Pa.C.S.A. § 3105(b); *see also Love v. Love*, 33 A.3d 1268, 1274 (Pa. Super. 2011) (citing *Nicholson v. Combs*, 703 A.2d 407 (Pa. 1997)).

In this matter, the trial court operated under the mistaken view that unlike a court-ordered child support award, an agreement for child support could not be modified downward, because parties may not bargain away the child's right to support. *See, e.g., Knorr v. Knorr*, 588 A.2d 503, 505 (Pa. 1991). Put another way, the trial court seemingly believed that, if a contract

- 6 -

provides for child support above and beyond what a parent would owe under the Statutory Guidelines,[3] then the parent may not seek a downward modification. **See** Trial Court Opinion, 5/27/21 (T.C.O.) at 5. This is not entirely accurate.[4]

However, the principal reason why the trial court denied Husband's modification request, was because the request was, in the court's view, "academic." **Id.** The court explained that, under Paragraph 28, whatever downward child support modification Husband obtained would be irrelevant, because alimony would then make up the difference.

The trial court's rationale overlooks Wife's remarriage and any pre-2019 tax consequences. Under the Divorce Code, an alimony obligation terminates upon the payee's remarriage or cohabitation. **See** 23 Pa.C.S.A. §§ 3701(e), 3706. Relying on the Code, Husband reasoned that without alimony, he was entitled to an actual reduction of his monthly support obligation.

_____

[3] **See** 23 Pa.C.S.A. § 4322 (Statutory guideline); **see also** Pa.R.C.P. 1910.16-3 ("Support Guidelines. Basic Child Support Schedule.").

[4] In **Nicholson v. Combs**, our Supreme Court explained that courts must be able to reduce the amount if the payor establishes an inability to pay, because the failure to comply with a child support order can lead to incarceration. **Nicholson**, 703 A.2d at 416-17. When there is a separate support order based on a support agreement, the support order may be increased in the best interests of the children, or modified downward upon a showing of changed circumstances, which demonstrate the inability to pay. "The trial court's power to modify the support order downward is not affected by the existence of the agreement upon which the support order is based. The court is modifying its own order, and not the parties' agreement." **Id.** at 417. "However, the support agreement remains a viable contract not subject to downward modification, and the payee may seek relief in law or in equity." **Id.**

- 7 -

Regarding Wife's eligibility to receive alimony, despite her remarriage, the trial court agreed with Wife's reliance on *Zullo, supra. See* T.C.O. at 3-4. The court concluded that Wife's remarriage did not bar her from receiving the payments, because payments were "an amalgam of child support and *equitable alimony* designated for the benefit of the child." *Id*. at 6 (emphasis added).

On appeal, Husband argues that the trial court's reliance on *Zullo* was misplaced. In *Zullo*, the trial court adopted the master's recommended approach to eliminating the marital debt. Specifically, the master recommended that husband render to the wife monthly payments "to assist her in extinguishing the marital debt." *Zullo*, 613 A.2d at 545. While the husband was making these payments, the wife remarried. The husband then sought to terminate his monthly alimony payments under the Divorce Code, which mandated that alimony terminates upon the recipient's remarriage.[5] The trial court granted his request. This Court reversed the trial court, and our Supreme Court affirmed our decision.

The High Court explained that the traditional purpose of alimony was to provide one spouse with "sufficient income to obtain the necessities of life." *Id.* (citation omitted). However, the Court explained that "the wife was not receiving alimony in the traditional sense, but as a way to compensate her for the lack of property needed to satisfy joint obligations." *Id.* at 546. The wife

_____

[5] The husband in *Zullo* relied on the former Section 501(e), which is the functional equivalent of the current Section 3701.

was not in need of income to "obtain the necessities of life," because she had sufficient income to support herself. Thus, the Supreme Court concluded that although the monthly payments were designated as "alimony," the payments were not intended to be alimony; therefore, the designation was not binding. *Id.* at 545.

A review of Supreme Court precedent illustrates how monthly payments, issued by a court to facilitate its equitable distribution scheme, have been called various names: "equitable reimbursements" or "reimbursement alimony," or "monthly payments in lieu of property settlement;" but despite their nomenclature, these monthly payments were not treated as alimony, because they were not designed to support a former spouse. *See id*. at 546 (citing *Bold v. Bold*, 574 A.2d 552, 557 (Pa. 1992) (holding that the husband's monthly payments to the wife were not alimony, but "equitable reimbursement" for contributions the wife made while husband sought his chiropractic degree); *see also Wagoner v. Wagoner*, 648 A.2d 299, 301-02 (Pa. 1994) (holding that the monthly payments were not alimony, but a substitute for granting the payee-wife a share of the payor-husband's pension)).

In the case at bar, the trial court likened Husband's payments to those in *Zullo, Bold*, or *Wagoner* – nominally alimony, but really something else entirely.

> The primary purpose of alimony in this case was not to provide [Wife] with sufficient income to obtain the necessities of life. Rather, the purpose was to maintain the

- 9 -

childhood home for the children until the youngest child finished high school. That purpose still exists. The $1,800 per month payment is equitable reimbursement.

T.C.O. at 4.

Husband argues **Zullo** is inapplicable, because it arose from an award, as opposed to a contract. We agree with Husband's position. To be clear, the learned trial court understood that it was bound by the law of contracts; it just found **Zullo** to be factually analogous to the instant case. However, **Zullo** and its progeny are too attenuated from the law of contracts to be of much use here.

In **Zullo**, the courts were free to construe the monthly payments as something other than alimony, because the payments were a product of a court-ordered equitable distribution award. Here, by contrast, the trial court could only look to the terms of the Marriage Settlement Agreement – terms created by the parties, which unambiguously referred to the payments as alimony. Thus, the parties' alimony demands to be treated as alimony – not as equitable reimbursement or anything else. Husband's first appellate issue has merit, but only insofar as **Zullo** was inapposite.

As we may affirm on any valid basis, we consider *de novo* whether the parties' Marriage Settlement Agreement prohibited Wife from receiving alimony in light of her remarriage.

Husband argues that because the alimony agreement constitutes an order of court under the Divorce Code, the Divorce Code's bar to alimony applies. 23 Pa.C.S.A. §§ 3701, 3706.

- 10 -

Section 3701 provides in relevant part:

> **(f) Status of agreement to pay alimony.—**Whenever the court approves an agreement for the payment of alimony voluntarily entered into between the parties, *the agreement shall constitute the order of the court* and may be enforced as provided in Section 3703 (relating to enforcement of arreages).

23 Pa.C.S.A. § 3701(f) (emphasis added).

Husband reasons further, that because an agreement shall constitute an order for alimony, Section 3701(e) also governs. Section 3701(e) provides:

> **(e) Modification and termination**.--An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. *Remarriage of the party receiving alimony shall terminate the award of alimony*.

23 Pa.C.S.A. § 3701(e) (emphasis added).

Finally, to drive the point home, Husband also relies on Section 3706:

> No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has *entered into cohabitation with a person of the opposite sex* who is not a member of the family of the petitioner within the degrees of consanguinity.

23 Pa.C.S.A. § 3706

Husband's reliance is misplaced, because his argument fails to appreciate the interplay between alimony *awards* and alimony *agreements*.

- 11 -

Section 3701(f) provides that an alimony agreement may be treated as a court order, but only for enforcement purposes. ***See*** 23 Pa.C.S.A. § 3701(f); ***see also Woodings v. Woodings***, 601 A.2d 854, 859 (Pa. Super. 1992) ("It is to be noted that the treatment of orders approving agreements is treated separately from orders directly entered by the court and the jurisdiction of the court is limited to ***enforcement only*** unless the agreement provides otherwise.") (emphasis original).

Put another way, Section 3701(f) unlocks the statutory remedies listed in Section 3703 ("Enforcement of arrearages") whenever a payor is in arrears, regardless of whether the payments were born of a marriage settlement contract or a court award. ***See also*** 23 Pa.C.S.A. § 3105(a) ("Effect of agreement between parties") ("A party to an agreement…may utilize a remedy or sanction set forth in this part ***to enforce*** the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.") (emphasis added).

Yet, these provisions do not grant courts *carte blanche* to treat alimony agreements as if they were alimony awards. For instance, Section 3105(c) provides that an alimony agreement shall ***not be*** subject to modification (in the absence of a specific contract provision to the contrary. ***See*** 23 Pa.C.S.A. § 3105(c). Likewise, Section 3701(e) ("Remarriage of the party receiving alimony shall terminate the award of alimony") and Section 3706 ("Bar to alimony") only apply to ***awards***, in the absence of a contrary provision in the agreement. ***See Woodings*** 601 A.2d at 859.

Parties to an alimony agreement often incorporate statutory language to govern their rights and responsibilities. ***See, e.g., Hawk v. Hawk***, -- A.3d --, 2019 WL 2602186 (Pa. Super. 2019) (non-precedential decision) (observing that the parties' alimony agreement provided, in part: "This alimony shall be modifiable in accordance with the provisions of 23 Pa.C.S.A. § 3701, *et. seq.*"). Generally speaking, however, courts may not turn to the statutory law of alimony to interpret an agreement unless they are invited to do so. ***See Kripp v. Kripp***, 849 A.2d 1159, 1165 (Pa. 2004) (***infra***).

Instantly, the parties' Marriage Settlement Agreement is entirely silent on the issue of alimony modification and termination, except to say that alimony will terminate after June 2024. The parties could have inserted language into their Agreement barring alimony upon Wife's remarriage, but they did not to do so. Thus, the question becomes, what effect does Wife's remarriage have upon her ability to receive alimony, when the Agreement is silent on that issue; and does this silence render the Agreement ambiguous.

We find ***Woodings v. Woodings***, 601 A.2d 854, 855 (Pa. Super. 1992) to be on point. There, the husband agreed to pay alimony for approximately three and a half years. The agreement provided that "the payments shall be non-modifiable and shall terminate on the death of the wife." ***Woodings***, 601 A.2d at 855. Meanwhile, the wife began cohabitating with a person of the opposite sex, which would typically bar alimony under the Divorce Code. ***Id.*** at n.1 (noting that former Section 507 ("Bar to Alimony") is substantially the same as the current Section 3706 ("Bar to Alimony")). The husband sought

to terminate his alimony obligation. The trial court concluded that if the parties had intended for the payments to cease upon cohabitation, they could have so provided. ***Id.*** at 857. On appeal, we affirmed.

We explained that the wife's "right to payments is not based on an award but is instead based on the signature of [the] husband to a contract." ***Id.*** The statutory bar to alimony did not come into play.

> The intent of the inclusion of alimony ***agreements*** only in the enforcement process of the Divorce Code did not extend application of other Code provisions relating to alimony to agreements. Alimony ***awards*** are governed by statute and provisions such as the bars relating to cohabitation and termination upon remarriage take effect by operation of law because the award is governed by the statute.
>
> […]
>
> When an agreement is entered for a specific amount for a stated period of time, without conditions for modifications or termination, it cannot be presumed that the parties intended the statutory bar or termination sections to apply.
>
> […]
>
> To incorporate extraneous statutory provisions to modify or terminate the agreement when not provided in the agreement may seriously impair the rights of the contracting parties.

***Id.*** at 859 (citations omitted) (emphasis original).

Here, while the parties' Agreement may be treated as an order under the Divorce Code for enforcement purposes, other aspects of the Divorce Code – *i.e.*, the bar to alimony – do not extend to the Agreement without a provision saying so. ***Id.*** Moreover, when – as here – an agreement is entered for a specific amount, for a stated period of time, without conditions for modification

- 14 -

or termination, we may not presume that the parties intended to include the statutory bar to apply. **Woodings**, 601 A.2d at 859.

For these reasons, we do not find that the Agreement's silence on the bar to alimony renders the Agreement to be ambiguous. **See id**. But even if we did, we recognize that it is improper to consult the alimony statutes to resolve an ambiguity in an alimony agreement. **See Kripp**, 849 A.2d at 1165 ("There is nothing in 23 Pa.C.S. § 3706 [("Bar to Alimony")] or in the Divorce Code to show that the General Assembly intended that the definition of cohabitation set forth in the statute be incorporated into or control private agreements or that the courts are foreclosed from applying the law of contracts to determine the parties' intent on such a matter. Nor is there a principle of law that would compel any one of these results.").

Thus, we agree with the trial court that the Agreement obligates Husband to pay the full $1,800 amount.  However, with due respect to the trial court, a formal allocation of child support and alimony is not necessarily academic.  Indeed, there could be potential tax consequences to the parties.

Under the Tax Cuts and Jobs Act of 2017 – and given that the parties' Agreement was executed before January 1, 2019 – Husband might be able to deduct the alimony portion of his support obligation from his taxable income. **See Clarification: Changes to Deduction for Certain Alimony Payments Effective in 2019**, INTERNAL REVENUE SERVICE., https://www.irs.com/forms-pubs/clarification-changes-to-deduction-for-certain-alimony-payments-effective-in-2019 (last visited June 28, 2022).  In

any event, Paragraph 28 enables Husband to pursue a formal allocation of his child support and alimony obligations, retroactive to January 15, 2021 – the date of Husband's original filing with the trial court.

To conclude: the trial court's reliance on **Zullo** was misplaced; nevertheless, the court ultimately did not err when it denied Husband's request to terminate his obligation to pay alimony upon a child support reduction. In our *de novo* review of the Marriage Settlement Agreement, we conclude that the Agreement was not ambiguous, and that in the absence of a provision to the contrary, Wife was not barred from receiving alimony upon remarriage. However, we conclude the court erred when it denied Husband's petition. We clarify that Husband is still entitled to seek support modification under Paragraph 28 of the parties' Agreement, even though the difference between the reduction in child support and the $1,800 figure shall be converted to alimony.

Order vacated insofar as it prohibited Husband from seeking a formal allocation of his child support and alimony obligations, totaling $1,800 per month. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>08/02/2022</u>