J-A25029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.H. AND S.H. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.H., MOTHER AND B.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 557 WDA 2022 |

Appeal from the Order Entered April 13, 2022
In the Court of Common Pleas of Cambria County Children and Youth
Services at No(s):  CP-11-DP-0000123-2021,
CP-11-DP-0000124-2021

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: FEBRUARY 10, 2023**

Appellants J.H. (Mother) and B.H. (Father) appeal from the order adjudicating their minor adoptive children, J.H.-M.[1] and S.H. (collectively, Children) dependent and finding that both Mother and Father were perpetrators of child abuse.  We affirm, in part, and vacate, in part.

Briefly, on October 18, 2021, Cambria County Children and Youth Services (CYS) received a ChildLine report alleging that (1) S.H. had been "unreasonably restrained and that her breathing was restricted," (2) both Children had been hit with a spoon, and (3) S.H. exhibited significant bruising on her buttocks.  Appellants subsequently entered a voluntary placement agreement stating that the Children would be placed in CYS's care and custody

---

[1] Father and one of the dependent children, J.H., share the same initials. Throughout this memorandum, we will refer to the child as J.H.-M.

while the Regional Office of the Bureau of Child and Family Services (OCYF) investigated the allegations. After the voluntary placement agreement expired on November 17, 2021, the trial court granted CYS's emergency petition to formally remove the Children from Appellants' care and placed the Children in CYS's custody.

Following a shelter care hearing on November 19, 2021, CYS filed dependency petitions for the Children. The trial court held an adjudicatory hearing on December 6, 2021. The trial court conducted an *in camera* hearing with S.H., who stated that Father beat her with his hand and that Mother beat her with a plastic spoon. S.H. also stated that on a separate occasion, Mother applied pressure to her throat and she could not breathe, and that although Father was present, he did not intervene.

CYS also presented testimony from caseworker Barbara Lusczek. Ms. Lusczek stated during the initial interview, S.H. confirmed that Mother had hit her on the buttocks with a spoon and that Mother had choked her on one occasion. N.T. Hr'g, 12/6/21, at 5-6. S.H. also stated that "she was spanked by Father with an open hand" and that "[J.H.-M.] also would get hit by his parents." *Id.* S.H. also told Ms. Lusczek that Father was present and sitting on a loveseat in the room when the choking incident occurred. *Id.* at 10.

Ms. Lusczek stated that she also observed S.H.'s interview at the Child Advocacy Center (CAC). *Id.* at 6. During that interview, Ms. Lusczek explained that S.H. "was able to give more detail as to what was going on when she was choked by her mother, specifically, that she was able to tell us

that when [Mother] pushed down on her neck that the sofa tilted back . . . she couldn't breathe, that she kind of like zoned out" and was in "what she called somewhat of a trance. She told the interviewer that there was a ringing in her ear, which is consistent with choking." *Id.* at 6-7. CYS also introduced photos depicting bruising on S.H.'s buttocks and a memorandum detailing the Children's interviews. *Id.* at 12.

At the conclusion of the hearing, the trial court found that the Children were dependent. The trial court also concluded that S.H. was a victim of child abuse as defined by the Child Protective Services Law (CPSL) at 23 Pa.C.S. § 6303 and that Appellants were the perpetrators of that abuse, Mother by commission and Father by omission and commission. On January 5, 2022, the trial court issued an order adjudicating the Children dependent, which was entered on January 10, 2022.[2]

Appellants simultaneously filed a timely notice of appeal and a motion for reconsideration, which the trial court granted on February 8, 2022. After conducting additional hearings and ordering additional briefing from the parties, the trial court issued an order reiterating its finding that Appellants were perpetrators of child abuse. *See* Trial Ct. Order, 4/13/22. The trial court

---

[2] According to the trial court docket entries, the trial court served the parties with notice of the written order on January 10, 2022. *See* Pa.R.A.P. 108(a)(1) (providing that the date of entry of an order is the day the clerk of court mails or delivers copies of the order to the parties); *see also* Pa.R.C.P. 236(b).

J-A25029-22

did not make any findings or render any further conclusions with respect to the underlying dependency petition. *Id.* at 1-2.

On May 13, 2022, Appellants filed a timely[3,4] notice of appeal and complied with Pa.R.A.P. 1925(a)(2)(i). The trial court issued a Rule 1925(a) opinion addressing Appellants' claims.

On appeal, Appellants raise the following issues for review:

1. The trial court erred and abused its discretion in concluding that [CYS] met its burden by clear and convincing evidence that [Mother] is a perpetrator of child abuse by commission.

2. The trial court erred and abused its discretion in concluding that [CYS] met its burden of proof by clear and convincing

---

[3] Appellants filed a notice of appeal on May 13, 2022. As noted previously, the trial court expressly granted reconsideration of its January 10, 2022 order on February 8, 2022, before the thirty-day appeal period expired. *See* Pa.R.A.P. 1701(b)(3) (providing that although the entry of a final order triggers the thirty-day appeal period, this period may be tolled if the trial court expressly grants a motion for reconsideration). After conducting additional hearings, the trial court issued an order reiterating its findings of abuse on April 13, 2022. Therefore, Appellants' May 13, 2022 notice of appeal was timely. *See id.*

[4] On June 13, 2022, this Court issued a rule to show cause as to why Appellants' appeal should not be quashed, as it was unclear whether the orders were final or otherwise appealable because "[a] court determination of child abuse without disposition would . . . be an interlocutory order." Rule to Show Cause, 6/13/22 (quoting *In Interest of R.M.R.*, 530 A.2d 1381, 1386 (Pa. Super. 1987)). After Appellants filed a response, this Court discharged the order. Upon review, it is clear that when the trial court expressly granted reconsideration of a final, appealable order, the appeal lies from the order entering the trial court's reconsidered decision, even if it reaffirms the trial court's previous order. *See, e.g.*, *Long v. Long*, 282 A.3d 694, 698 n.2 (Pa. Super. 2022); *Ford-Bey v. Prof'l Anesthesia Servs. of N. Am., LLC*, 229 A.3d 984, 986 n.2 (Pa. Super. 2020). Therefore, Appellants properly appealed from the April 13, 2022 order which reaffirmed the trial court's finding of child abuse after reconsideration.

evidence that [Father] is a perpetrator of child abuse by commission and omission.

3. The trial court erred and abused its discretion in concluding that [CYS] met its burden by clear and convincing evidence that both children are dependent children as defined by law.

Appellants' Brief at 6.

In their first two issues, Appellants argue that CYS failed to establish that Mother or Father were perpetrators of child abuse. With respect to the claims against Mother, Appellants refer to the two alleged incidents in which (1) Mother used a plastic spoon to spank S.H. on the buttocks and (2) Mother restricted S.H.'s breathing by pushing on the child's neck. Regarding the plastic spoon incident, Appellants argue that Mother's conduct fell under the corporal punishment exception to the CPSL. As to the choking incident, Appellants argue that CYS "solely relied on the CPS investigation wherein there was no injury discovered, no photographs taken, no marks seen by the caseworker" and where "[t]he sole evidence regarding this incident was the child saying that it occurred." *Id.* at 23-24. Therefore, Appellants conclude that the trial court erred in finding that Mother was a perpetrator of child abuse.

Appellants also argue that CYS failed to prove that Father was a perpetrator of child abuse by omission for failing to act during the incidents where Mother allegedly abused S.H. *Id.* at 13. In support, Appellants assert that Father's alleged presence in the room is insufficient to prove child abuse by omission. *Id.* at 15. Further, Appellants contend that "[t]he record

- 5 -

contains very little information about Father's alleged omission," including where Father was seated "in relation to the incident, whether [F]ather knew what was going on, and whether [F]ather said or did anything to indicate he knew what was going on." *Id.* at 15-16. With respect to the choking incident, Appellants argue that "the CPSL simply does not include failure to act as an option under interfering with the breathing of the child." *Id.* at 16. Appellants also claim that the plastic spoon incident "does not rise to the level of child abuse and therefore Father cannot be considered a perpetrator by omission or failing to act." *Id.*

Finally, Appellants claim that CYS failed to prove that Father was a perpetrator of child abuse by commission. Appellants acknowledge that Father admitted to smacking S.H. on the buttocks with an open hand approximately five times. *Id.* at 20. Appellants also note that S.H. had bruising on the area three days after the incident occurred. *Id.* at 21. However, Appellants argue that "[i]t is apparent based on the case law, that this incident does not rise to the level of unreasonable force." *Id.* Therefore, Appellants contend that there was insufficient evidence to establish that Father was a perpetrator of child abuse by commission. *Id.* at 22.

In dependency cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record" and we review the determinations for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015) (citation omitted). As part of a dependency

adjudication, a trial court may find a person to be "the perpetrator of child abuse[.]" ***Id.*** at 1176.

> The requisite standard of proof for a finding of child abuse pursuant to Section 6303(b.1) is clear and convincing evidence. Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

***Interest of A.C.***, 237 A.3d 553, 558 (Pa. Super. 2020) (citations and quotation marks omitted).

23 Pa.C.S. § 6303(b.1) provides, in relevant part, as follows:

> **(b.1) Child abuse.**—The term "**child abuse**" shall mean intentionally, knowingly or recklessly doing any of the following:
>
>> (1) Causing bodily injury to a child through any recent act or failure to act.
>>
>> \*     \*     \*
>>
>> (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.
>>
>> \*     \*     \*
>>
>> (8) Engaging in any of the following recent acts:
>>
>>> \*     \*     \*
>>>
>>> (v) Interfering with the breathing of a child.

23 Pa.C.S. § 6303(b.1). The CPSL defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." ***Id.*** at § 6303(a).

Under the corporal punishment exemption set forth at Section 6304(d), parents may "use reasonable force on or against their children for the

purposes of supervision, control and discipline of their children. Such reasonable force shall not constitute child abuse." *Id.* at § 6304(d).

In determining whether corporal punishment constitutes abuse, the Commonwealth Court[5],[6] has explained:

> [W]here the allegation of child abuse involves a parent's administration of corporal punishment for the purpose of disciplining a child, the ultimate question is whether the parent used 'reasonable force.'" *J.S. v. Department of Human Services*, 221 A.3d 333, 343 (Pa. Cmwlth. 2019) (citing 23 Pa.C.S. § 6304(d)). Notably, the focus is "on the parent's conduct rather than the result." *Id.*

> To differentiate "abuse" from an "accident" in the context of corporal punishment, our Supreme Court has offered the following guidance:

---

[5] We note that although Commonwealth Court decisions are not binding on this Court, they may be considered as persuasive authority. *Commonwealth v. Heredia*, 97 A.3d 392, 395 n.4 (Pa. Super. 2014).

[6] The CPSL definition of "child abuse" has been interpreted in numerous cases by both this Court and the Commonwealth Court. Although the definition of abuse has been consistently applied between both Courts, the evidentiary burden differs. As noted previously, CYS must present clear and convincing evidence to support a finding of child abuse in a dependency case. *See L.Z.*, 111 A.3d at 1174. Further, "[t]he finding of child abuse in a dependency proceeding can be appealed to [this Court.]" *Id.* at 1177. Outside of the dependency context, CYS or the Department of Public Welfare may file "an 'indicated report' of child abuse when 'substantial evidence' exists that an individual perpetrated child abuse[.]" *Id.* (citations and footnote omitted). "An individual can also petition to expunge the founded report from ChildLine through a Department of Public Welfare administrative process that would eventually be subject to appeal in Commonwealth Court." *Id.*

Therefore, although we rely on decisions by the Commonwealth Court for purposes of interpreting the CPSL statute, we do not apply the preponderance of the evidence standard set forth in those cases.

> To balance the competing objectives of protecting children from abuse while maintaining the parental right to use corporal punishment, the legal standard for differentiating abuse from accident must acknowledge some level of culpability by the perpetrator that his actions could reasonably create a serious injury to the child. The standard that best comports with the problem of defining abuse in terms of nonaccidental injury is criminal negligence.

***P.R. v. Department of Public Welfare, Office of Hearings and Appeals***, 801 A.2d 478, 486-87 ([Pa.] 2002).

> Criminal negligence is defined as follows: A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

> 18 Pa.C.S. § 302(b)(4).

***P.L. v. Department of Human Services***, 236 A.3d 1208, 1211-12 (Pa. Cmwlth. 2020) (some formatting altered).

> Here, the trial court addressed the allegations of abuse as follows:

> [T]he record indicates that the trial court removed S.H. from [Appellants'] home based on allegations of physical abuse by commission and omission. Specifically, [CYS] received a Childline report [which] indicated that one or both of [Appellants] unreasonably restrained S.H., restricted her breathing, and hit her with a spoon, causing significant bruising on her buttocks.

> Agency Caseworker Barbara Lusczek testified at the Adjudication Hearing that she had spoken with S.H. and that the child confirmed these reports, stating that Mother had hit her on her buttocks with a spoon and had choked her on one occasion, while Father sat nearby and did not intervene. Additionally, Ms. Lusczek submitted a memorandum detailing an interview S.H. did with the Child Advocacy Center (CAC) in which she made consistent allegations of abuse and indicated that [Appellants] had instructed

- 9 -

J.H[-M.], to lie regarding what occurred in the home. Out of concern for S.H.'s welfare, she was removed from [Appellants'] home along with her brother.

A shelter care hearing was held on November 19, 2021, and on December 1, 2021 this [c]ourt issued a Shelter Care Order, finding that S.H. was a dependent child and granting her legal and physical custody to the Agency. This [c]ourt held an Adjudicatory hearing on December 6, 2021, at which it found that S.H. was a dependent child. Additionally, this [c]ourt found that S.H. was a victim of child abuse as defined at 23 Pa.C.S. § 6303 and that [Appellants] were the perpetrators of that abuse.

In its second Adjudicatory hearing on this matter, held on March 16, 2022, this [c]ourt found that Father had repeatedly struck S.H. with an open hand, that Mother struck S.H. with a plastic spoon while [F]other was present, and that Mother had pressed her hands against S.H.'s throat to the point of obstructing her breathing while Father was present. The [c]ourt also found that this conduct did not fall within the corporal punishment exception to child abuse and that [Appellants'] behavior deviated from the standard of care of a reasonable person. Accordingly, the [c]ourt determined that [Appellants] acted in a criminally negligent manner by clear and convincing evidence and found [Appellants] to be perpetrators of child abuse.

\* \* \*

While this Court did not make a finding that J.H.[-M.] was himself the victim of child abuse, the aforementioned abuse of his sibling, as well as his statements to the CYS caseworker and in the CAC interview created serious concerns for this [c]ourt regarding J.H.[-M.'s] welfare. Accordingly, J.H.[-M.] was removed from [Appellants'] home along with his sibling. This removal was proper and based on the []Children's best interests and in a manner free of bias or prejudice.

Trial Ct. Op., 6/13/22, at 9-10, 12.

After the trial court conducted an additional hearing on Appellants' claims, the trial court made the following findings of fact:

[F]ather repeatedly struck S.H. with an open hand, then [M]other repeatedly struck the child with a plastic spoon while Father was

present. S.H. testified to the pain caused, and photographs introduced at [the] hearing show the great majority of the child's buttocks to be solidly bruised, with the perimeter of her buttocks covered in smaller, circular bruises. On a separate day, [M]other placed a hand on S.H.'s throat and pressed against her throat with such force that the child testified she could not breathe, and that once released, her ears were ringing. She testified [that F]ather was present when this occurred and did not intervene. S.H. was specific in her testimony as to the location of the incident, [M]other's glasses flying off, the couch tipping slightly, and how she gagged when [M]other released her grip from S.H.'s throat.

The [c]ourt also considered information from [CYS's] exhibit #3 (the memorandum prepared by caseworker Barb Lusczek and admitted without objection). Specifically: (1.) [S.H.] took part in a Child Advocacy Center (CAC) interview where she was consistent, and where she relayed that her parents had told her younger brother to lie and not to tell what happened to them in the home; (2.) younger brother, J.H.-M, was interviewed independently at the CAC and stated that his parents told him to lie and not to tell anything that occurred in the home, and admitted that he and his sister would get "beat" with a spoon; (3.) although neither [Appellant] testified, [M]other told caseworker that she never hit either of the children, but that [F]ather had struck S.H. [five] times with an open hand; and (4.) [F]ather told caseworker that S.H. probably obtained the bruises from cheer[leading], because she was the person lifted in the air. No testimony or evidence was ever presented to in any way substantiate [F]ather's claim.

The [c]ourt finds that both the abuse to S.H. by striking her with an object and the extensive bruising to the buttocks, as well as the choking, were precipitated by [Appellants] being upset by conduct, or perceived misconduct, of S.H. The first being an email S.H. sent to a friend about being uncomfortable because of a teacher touching her, and the second being misinformation about a grade/assignment. Based on their statements and conduct, [Appellants] seem quite concerned with their family name and reputation.

The [c]ourt considered the corporal punishment exception to child abuse finding, and does not find it applicable, as the force used by [M]other was overtly unreasonable. Further, both [Appellants'] behavior, [M]other by commission, and [F]ather by omission,

- 11 -

deviated from a standard of care that a reasonable person would have observed in their situation.

Trial Ct. Order, 4/11/22, at 1-2.

Following our review of the record, we discern no abuse of discretion in the trial court's conclusion that both Mother and Father were perpetrators of child abuse based on the choking incident. **See L.Z.**, 111 A.3d at 1174; **see also** 23 Pa.C.S. § 6303(b.1)(8)(v). As noted previously, the trial court credited S.H.'s testimony that Mother "put her hands to [S.H.'s] throat to a degree which cut off her airways and caused ringing in her ears" and that, although Father was present, he "did not step in." **See** N.T. Hr'g, 12/6/21, at 26. Given S.H.'s description of the incident, the trial court did not abuse its discretion by concluding that Father could have and should have done something to protect S.H. and that his failure to do so established child abuse by omission under the CPSL. **See** 23 Pa.C.S. § 6303(b.1)(5). Under these circumstances, we agree with the trial court that Father witnessed Mother choking S.H. which was sufficient to establish that Father's failure to act intentionally, knowingly, or recklessly created a "reasonable likelihood of bodily injury" to Child. **Id.** Therefore, we will not disturb the trial court's conclusion on that issue.

With respect to the incidents where Appellants smacked S.H.'s buttocks, Mother with a plastic spoon and Father with his hand, we conclude that CYS failed to present clear and convincing evidence to establish child abuse. Although S.H. suffered bruising as a result of these incidents, there is no

evidence that either parent used unreasonable force on S.H. or disregarded a substantial and unjustifiable risk or grossly deviated from the standard of care that a reasonable parent would observe. *See* 18 Pa.C.S. § 302(b)(4); *P.L.*, 236 A.3d at 1211-12. Therefore, we conclude that the trial court erred in finding that Appellants were perpetrators of child abuse based on these incidents.

Appellants also challenge the trial court's adjudication of Children as dependent. Specifically, they argue that because they were not perpetrators of abuse, the trial court's dependency determination has no basis. However, because we have determined that Father and Mother were both properly found to be perpetrators of abuse to S.H., this issue is moot. *See In re R.P.*, 957 A.2d 1205, 1213 (Pa. Super. 2008) (holding that where trial court finds one sibling dependent due to abuse, court may determine other siblings also dependent, even if they have not been abused).

For these reasons, we affirm the trial court's finding of abuse with respect to the incident involving Mother applying pressure to S.H.'s neck and the order adjudicating Children dependent. We vacate the trial court's finding of abuse in all other respects.

Order affirmed, in part, and vacated, in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/10/2023