J-S45016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| SUSAN J. POST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN D. ANDERSON | : | |
| | : | |
| Appellant | : | No. 2183 EDA 2022 |

Appeal from the Order Entered June 30, 2022
In the Court of Common Pleas of Carbon County
Domestic Relations at No: 19-3410,
PACSES: 202300986

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 19, 2023**

Appellant, John D. Anderson, appeals from the June 30, 2022[1] order directing him to pay alimony to his former wife, Appellee, Susan J. Post, in accordance with the parties' Property Settlement Agreement ("PSA"), which was incorporated but not merged into the divorce decree in this matter. We affirm.

The parties married on August 11, 1991, and Appellant filed a complaint in divorce on November 18, 2019. On December 29, 2020, the parties executed the PSA, in which Appellant agreed to pay Appellee, Susan J. Post, $318.00 per month for six years. The PSA further provided in relevant part

_____

[1] Appellant filed his appeal prior to the docketing of this order. The order's omission from the docket was an apparent oversight by the trial court that has since been corrected.

that "Husband's obligation to alimony shall be non-modifiable except upon the reduction of Husband's employment income or Wife's remarriage and/or cohabitation with a person of the opposite sex who is not a member of the spouse's family[.]"  PSA at VIII.

On June 15, 2021, Appellant filed a petition to modify his obligation based on a reduction in income.  As of the parties' separation, Appellant was earning $53,700 as an employee of a Dollar General store.  In July of 2020, Appellant required knee surgery and began receiving short term disability pay, which ceased in December of 2020.  Thereafter, Appellant obtained a job driving a school bus, at which he earned less than he did at Dollar General. Appellant admitted that, upon completion of his treatment for his knee injury, his doctor released him to return to work with no restrictions.  Appellant nonetheless sought out the bus driver job because it would not require him to be on his feet while working.

On November 22, 2021, a hearing officer issued a report reflecting the foregoing facts.  The hearing officer reasoned that Appellant's reduction in income was voluntary and therefore did not entitle him to a modification of the contractual alimony payment.  The hearing officer also reasoned that Appellant's modification petition opened the door for an assessment of Appellee's income, which had increased since separation.  The hearing officer recommended that alimony payments cease based on Appellee's increased income.  On November 23, 2021, the trial court entered an interim order in

accord with the hearing officer's recommendations, retroactively terminating his alimony obligation as of June 15, 2021, the date of his modification petition.

On December 7, 2021, Appellee filed exceptions to the hearing officer's November 22, 2021 report and recommendations. She did not file exceptions to the trial court's November 23, 2021 interim order. By orders of June 8, 2022 and June 16, 2022,[2] the trial court ordered that Appellant's alimony obligation be reinstated retroactive to June 15, 2021. On June 28, 2022, Appellant filed a motion for reconsideration arguing, among other things, that the trial court's jurisdiction lapsed before its June 8 and June 16, 2022 orders, because Pa.R.C.P. 1910.12(h) provides that a final order "shall" be entered within 60 days of exceptions to the interim order. The sixty-day period from Appellee's exceptions expired on Monday February 7, 2022 well before the June, 2022 orders in question. The trial court denied reconsideration on June 30, 2022. This timely appeal followed.

Appellant presents the following questions:

> A. Whether the trial court committed an error of law, abused its discretion, or otherwise ruled improperly in disregarding [Appellee's] failure to file exceptions to its order dated November 23, 2021, as would have been necessary to challenge that order *in addition to* the exceptions that [Appellee] actually did file in opposition to the separate report of the hearing officer dated one day earlier, November 22, 2021, pursuant to Pennsylvania Rule of Civil Procedure No. 1910.12(e),

---

[2] The June 16, 2022 order addressed arrearages.

thereby depriving the trial court of subject matter jurisdiction to review and modify the said order.

B. Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in entering its orders dated June 8, 2022 and June 16, 2022 (and by subsequently affirming same upon reconsideration by order dated June 30, 2022), in disregard of the termination of its jurisdiction to do so more than sixty (60) days after the filing of 'Plaintiff, Susan J. Post's Exceptions to the Report of the Hearing Officer Filed in the Domestic Relations Section Report Dated November 23 [*sic*], 2021' pursuant to Pennsylvania Rule of Civil Procedure 1910.12(h).

C. Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in exceeding the abuse of discretion standard of review as applicable to exceptions in a support case, by which such abuse of discretion can only be found by clear and convincing evidence of a misapplication of law, an unreasonable exercise of judgment, and/or a judgment based on bias, ill will, prejudice, or partiality.

    1. Whether the trial court likewise committed an error of law, abused its discretion, or otherwise ruled improperly in applying principles of equity and fairness, rather than the law of contracts, to overrule the hearing officer's findings and interpret the parties' written [PSA] in a way that is inconsistent with the clear and unambiguous terms of that agreement itself.

Appellant's Brief at 29-30 (italics in original).

In his first assertion of error, Appellant argues that Appellee committed a fatal procedural misstep by filing exceptions to the hearing officer's report and recommendations, rather than to the trial court's interim order. Rule 1910.12(d) provides for a hearing officer to receive evidence, hear argument, and issue a report, as happened in this case. Pa.R.C.P. 1910.12(d). Rule

- 4 -

1910.12(e) requires the trial court to enter an interim order in accordance with the recommended order of the hearing officer, as the trial court did in this case on November 23, 2021. Pa.R.C.P. 1910.12(e). Rule 1910.12(e) further provides that any party may file "written exceptions to the report of the hearing officer and interim order" within 20 days of the date of mailing or receipt of the interim order. *Id.* Rule 1910.12(f), in turn, provides detailed guidance on exceptions to the hearing officer's report:

> Within twenty days after the date of receipt or the date of mailing of the report by the hearing officer, whichever occurs first, any party may file exceptions to the report or any part thereof, to rulings on objections to evidence, to statements or findings of facts, to conclusions of law, or to any other matters occurring during the hearing. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final order, leave is granted to file exceptions raising those matters. If exceptions are filed, any other party may file exceptions within twenty days of the date of service of the original exceptions.

Pa.R.C.P. 1910.12(f). Subsection (g) then provides, without explicit reference to the hearing officer's report or the interim order, that the absence of exceptions within 20 days renders the interim order final. Pa.R.C.P. 1910.12.(g).

In this case, the trial court reasoned as follows:

> [Appellee] filed timely exceptions to the hearing officer's report. She was not required to file an identical set of exceptions to the interim order issued by the Domestic Relations Office considering said order reiterated the hearing officer's report nor necessarily include the words 'and Interim Order' on those exceptions. This court feels that [Appellee] followed proper procedure for filing exceptions and did not need to duplicate those

exceptions as a challenge to the interim order or even reference that it was to the interim order.

Trial Court Opinion, 8/30/22, at 8. As noted above, the trial court's interim order in this case was entered one day after the hearing officer's report. Appellant provides no law supporting his argument that the absence of exceptions to both the report and the interim order precludes the movant from obtaining relief. Our own research has uncovered no such law and in fact, the applicable rules do not require the filing of duplicative exceptions. We, therefore, discern no merit to Appellant's first assertion of error.

Next, Appellant argues that the trial court's jurisdiction over Appellee's exceptions lapsed because the court failed to issue a final order within 60 days of the date of the exceptions. Rule 1910.12(h) provides:

If exceptions are filed, the interim order shall continue in effect. The court shall hear argument on the exceptions and enter an appropriate final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the filing of exceptions to the interim order. No motion for post-trial relief may be filed to the final order.

Pa. R.C.P. No. 1910.12(h). Appellant notes that the statute is mandatory, as it provides that the trial court "shall" hear argument and issue an order. Further, there is no doubt that the order in this case was late. The question is what relief, if any, is available to Appellant.

Appellant relies on Rule 1910.12(h) and 42 Pa.C.S.A. § 5505 to support his argument that jurisdiction lapsed. The latter provides: "Except as otherwise provided or prescribed by law, a court upon notice to the parties

may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505. This Court has held that "§ 5505 applies only to final orders." **Mfrs. and Traders Trust. Co. v. Greenville Gastroenterology**, 108 A.3d 913, 971 n.3 (Pa. Super. 2015). We do not believe these two statutes, individually or in tandem, deprived the trial court of jurisdiction in this case. We have already concluded that, given Appellee's timely exceptions, the interim order was not rendered final. And Rule 1910.12(h) expressly provides for subsequent modification of the interim order. Thus, because the interim order was not rendered final by the absence of timely exceptions, and because Rule 1910.12(h) expressly provides for subsequent modifications, § 5505 does not apply here.

Appellant also argues that the trial court's jurisdiction lapsed because it issued its order more than sixty days after Appellee's exceptions. As Appellant acknowledges, Rule 1910.12(h) is silent on the consequences of a trial court's failure to act within 60 days. Appellant argues that this Court's opinion in **L.A.D. v. T.M.B.**, 201 A.3d 1273 (Pa. Super. 2018), supports his argument. In **L.A.D.**, we vacated as a nullity a reconsidered final support order entered after the statutorily prescribed 120 days for reconsideration had passed. In

that case, by operation of Pa.R.C.P. 1930.2,[3] the trial court's failure to act within 120 days of its grant of reconsideration resulted in a denial and rendered the underlying order final and appealable. Thus, the trial courts' jurisdiction was divested as of the beginning of the new appeal period. *Id.* at 1277.

The instant matter is different. Rule 1930.2, at issue in ***L.A.D.,*** addresses motions for reconsideration of orders that would otherwise be final and appealable. Thus, the trial court may retain jurisdiction by granting reconsideration within the original 30-day appeal period. A grant of reconsideration under Rule 1930.2, followed by the trial court's failure to enter a reconsidered decision within 120 days, results in a deemed denial of the underlying motion and the commencement of a new appeal period. Pa.R.C.P. 1930.2(d). Pursuant to the express language of Rule 1930.2 and this Court's opinion in ***L.A.D.***, the trial court had no jurisdiction to enter a reconsidered order more than 120 days after it first granted reconsideration. Thus, its subsequent reconsidered order was a nullity. ***L.A.D.***, 201 A.3d at 1277.

---

[3] Rule 1930.2 governs motions for reconsideration in support actions. Its explanatory comment explains that the timeliness requirements of Rule 1930.2 harmonize with Appellate Rule 1701, which permits a trial court to take further action on a final order subject to appeal in the event of a motion for reconsideration. Pa.R.C.P. 1930.2; Pa.R.A.P. 1701(b)(3). We observe that that the Rules of Criminal Procedure employ a similar provision for the deemed denial of timely post-sentence motions. Pa.R.Crim.P. 720(B)(3).

Rule 1910.12(h), unlike Rule 1930.2, does not address reconsideration of an otherwise final and appealable order. Rather, it addresses exceptions to an interim order. And, while Rule 1910.12(h) provides a mandatory 60-day deadline for entry of a final order, it does not include any language stating that the trial court's failure to act on exceptions within the prescribed 60 days results in a deemed denial of all exceptions, thus rendering the interim order final and appealable. In these respects, Rule 1910.12(h) is substantively distinct from Rule 1930.2. From the inclusion of a deemed denial provision in Rule 1930.2. (and Pa.R.Crim.P. 720), we can infer that its omission from Rule 1910.12 is intentional. *See Commonwealth v. Kelly*, 102 A.3d 1025, 1029 (Pa. Super. 2014) (explaining that it is not for the courts to add to a statute a requirement its author did not include). That is, "[A]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan. State Farm Mut. Cas. Auto Ins. Co.*, 788 A.2d 955, 966 (Pa. 2001) (**quoting** Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 536 (1947)).

In summary, Appellant is correct that the use of the word "shall" is mandatory, and that the trial court was derelict in its mandatory duty in this case. We nonetheless conclude there is no statutory or jurisprudential authority for Appellant's argument that the trial court's inaction divested it of jurisdiction. We therefore move to the merits.

In his final argument, Appellant asserts that the trial court misinterpreted the parties' PSA. As explained above, the PSA provides that "Husband's obligation to alimony shall be non-modifiable except upon the reduction of Husband's employment income or Wife's remarriage and/or cohabitation with a person of the opposite sex who is not a member of the spouse's family[.]" PSA at VIII. Appellant's income has since been reduced. Appellee is not remarried or cohabiting with a member of the opposite sex. Given these undisputed facts, and the plain language of the PSA, Appellant argues that he is entitled to a reduction in his alimony obligation under the PSA, and that the trial court erred in granting Appellee's exceptions to an interim order that did so.

Alimony obligations arising from contractual agreements, rather than court orders, are governed by contract law. ***Long v. Long***, 282 A.3d 694, 698 (Pa. Super. 2022). We discern the parties' intent as follows:

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.

***Id.*** (**quoting *Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004)).

The trial court relied on the doctrine of necessary implication to conclude that Appellant's voluntary reduction in his income would not entitle him to a reduced Alimony payment under the PSA. The doctrine of necessary implication operates as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.
>
> Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent. In the absence of an express term, the doctrine of necessary implication may act to imply a requirement necessitated by reason and justice without which the intent of the parties is frustrated.
>
> The duty of good faith and the doctrine of necessary implication apply only in limited circumstances. Implied duties cannot trump the express provisions in the contract. Both the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract.

*Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005) (internal citations and quotation marks omitted).

In *Stamerro*, this Court held that the doctrine of necessary implication prevents a spouse from seeking a reduction of a contractual alimony payment based upon a voluntary reduction of income. *Id.* at 1261-62. We explained that "[t]he purpose of alimony is to provide the receiving spouse with sufficient income to obtain the necessities of life. Alimony is generally based upon

- 11 -

reasonable needs in accordance with the parties standard of living established during the marriage, and the payor's ability to pay." **Id.** at 1259. Given the purposes of alimony, the **Stamerro** Court held that the trial court properly implied a term whereby the husband could not reduce his contractual alimony obligation through a voluntary reduction of income. **Id.** at 1261-62.

> Although the agreement did not expressly state that Husband could seek a reduced alimony payment only upon an involuntary salary reduction, to infer otherwise would give Husband the power to unilaterally defeat the purpose for which the alimony agreement was made, and to destroy Wife's right to receive the benefit of the support for which she bargained.

**Id.**

**Stamerro** is directly on point here. The record reflects that Appellant was medically cleared to return to his prior job but chose a lower paying job instead. Under the rationale of **Stamerro**, Appellant's action would improperly deprive Appellee of the benefit of the alimony that she bargained for. Thus, the doctrine of necessary implication applies in the circumstances before us in order to avoid an injustice. We therefore discern no error in the order on appeal—by which the trial court reinstated Appellant's contractual alimony obligation—because the only basis for reduction or elimination of Appellant's obligation was his voluntary reduction in income.

Based on the foregoing, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/19/2023